UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MANUEL SANCHEZ, on behalf of himself and all other persons similarly situated, known and unknown, ) ) ) ) | |
| Plaintiff, ) ) | Case No. 14-cv-4645 |
| v. ) ) | Judge Joan B. Gottschall |
| ROKA AKOR CHICAGO LLC, ) ) | |
| Defendant. ) | |

**MEMORANDUM OPINION & ORDER**

Plaintiff Manuel Sanchez, for himself and on behalf of the class he seeks to represent ("Plaintiffs"), bring this lawsuit against Defendant Roka Akor Chicago LLC ("Roka Akor"), alleging that Roka Akor violated the minimum wage provisions of the Fair Labor Standards Act ("FLSA") and the Illinois Minimum Wage Law ("IMWL") by illegally taking a "tip credit" against its servers' minimum wages. Sanchez argues that Roka Akor forfeited its right to take a tip credit for two reasons: (1) it required its employees to distribute a portion of their tips to the Executive Chef and Head Chef, both of whom qualify as "employer[s]" under the FLSA and IMWL; and/or (2) it required its employees to distribute a portion of their tips to certain "kitchen" staff and the "polisher," both of whom are non-tipped employees. Dkt. 61. Plaintiffs have moved to certify a class as to their IMWL claim and for conditional certification for their FLSA claim. For the reasons discussed below, plaintiffs' motion for class certification is granted. Additionally, plaintiffs' FLSA claims may proceed as a collective action.

I.     BACKGOUND

Roka Akor is a Japanese sushi and steak restaurant in Chicago, Illinois. Named Plaintiff Manuel Sanchez and Opt-in Plaintiffs Bradley Smith, Douglass Pfundstein, and Bulmaro Damaso worked as servers at Roka Akor during the relevant time period. Roka Akor treats many of its employees, including servers, as "tipped employees" under the tip-credit provisions of the FLSA and IMWL. Additionally, Roka Akor operates and facilitates a tip pool on behalf of its tipped employees. The participants in the tip pool vary somewhat between the lunch shift and the dinner shift. During the dinner shift, there are five categories of employees that share in the tip pool: (1) runner; (2) server assistant; (3) bar; (4) kitchen; and (5) polisher. During the lunch shift, bar service is typically lighter, so the bartender and polisher are not included in the tip-out. In addition, the runner serves as the server assistant during the lunch shift. The tip pool is managed through an Excel spreadsheet that is used to calculate a server's tip out for each shift.

Under the provisions of the FLSA and IMWL, Roka Akor is allowed to pay its tipped employees less than the prevailing minimum wage if the employees are able to make up the difference in tips. *see* 29 U.S.C. § 203(m); 820 ILCS § 105/4(c). The difference between the reduced wage and the minimum wage is called the "tip credit." In order to take the tip credit, each tipped employee must ordinarily retain all of his tips. *see* 29 U.S.C. § 203(m); 820 ILCS § 105/4(c). This restriction does not apply, however, if the tipped employees are participating in a valid tip pool. *see* 29 U.S.C. § 203(m); 820 ILCS § 105/4(c). To be valid under the FLSA and IMWL, the tip pool must only include employees who "customarily and regularly receive tips," and the employer "may not retain any of the employees' tips for any other purpose." *Starr v. Chicago Cut Steakhouse, LLC*, 75 F.Supp.3d 859, 865 (N.D. Ill. 2014). If an employer

improperly operates a tip pool, the employer cannot take the tip credit provision under either the FLSA or IMWL. *Id.*

Plaintiffs argue that the tip pool arrangement is improper for two reasons: (1) the Executive and Head Chef (part of the "kitchen" category) qualify as "employers" under the FLSA and IMWL and are therefore ineligible to participate in the tip pool; and (2) other kitchen staff members and the polisher are "non-tipped" employees because they do not have more than *de minimis* customer interaction. Roka Akor argues that the Executive and Head Chef are not employers and that the tipped kitchen staff and polisher qualify as tipped employees. Roka Akor also argues that assuming *arguendo* that the Executive and Head Chef are employers and/or the tipped kitchen staff and polisher do not qualify as tipped employees, the tip pool is still lawful because it was a voluntary tip pool.

Plaintiffs have moved for class certification on the IMWL tip pool claims and for conditional certification of the FLSA tip pool claims. As explained below, plaintiffs' motion for certification on the IMWL tip pool claims is granted and this court will skip conditional certification of the FLSA claim and allow it to proceed as a collective action.

## II. DISCUSSION

### A. Plaintiffs' Motion for Class Certification

#### 1. Legal Standard

The decision to certify a class action rests within the discretion of the district court. *Mira v. Nuclear Measurements Corp.*, 107 F.3d 466, 471 (7th Cir. 1997). "[T]he party seeking class certification assumes the burden of demonstrating that certification is appropriate." *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993). The named plaintiff bears the burden of showing by a preponderance of the evidence that all of Rule 23's

3

requirements are satisfied. *Comcast Corp. v. Behrend*, ― U.S. ―, 131 S.Ct. 2541, 2551 (2011). The requirements of Federal Rule of Civil Procedure are as follows: (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4) the representative parties will fairly and adequately protect the interests of the class (adequacy). Fed. R. Civ. P. 23(a)

If plaintiffs meet this initial burden, they must then show that the proposed class satisfies one of the three requirements set forth in Rule 23(b). *See Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). Because plaintiffs seek money damages, they must meet the requirements of Rule 23(b)(3). Therefore, plaintiffs must show that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members (predominance), and that a class action is superior to all other available methods for fair and efficient adjudication of the controversy (superiority)." Fed. R. Civ. P. 23(b)(3); *see also Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 814 n.5 (7th Cir. 2012). In addition to Rule 23 requirements, plaintiffs must also provide a workable class definition by demonstrating that the members of the class are identifiable. *See Oshana*, 472 F.3d at 513.

The court "must make whatever factual and legal inquiries necessary to ensure that requirements for class certification are satisfied before deciding whether a class should be certified, even if those considerations overlap the merits of the case." *Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 815 (7th Cir. 2010) (citing *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001)). Although *Szabo* stands for the proposition that the court is not free to accept all of the complaint's allegations when deciding whether to certify a class, the decision whether to certify a class is not based on a preliminary assessment of the ultimate merits of the

plaintiffs' claims. *Rahim v. Sheahan*, 2001 WL 1263493, at *10 (N.D. Ill. Oct. 19, 2001). Rather, the preliminary inquiry is into the merits of those allegations that bear on the suitability of a case for class treatment under Rule 23(a) and (b). *Id.* To base class certification on a prediction of who will win the case would be at odds with *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974). *Id.* In the end, the court has "broad discretion to determine whether certification of a class-action lawsuit is appropriate." *Ervin v. OS Restaurant Servs., Inc.*, 632 F.3d 971, 976 (7th Cir. 2011).

### 2. Analysis

Plaintiffs advance class-action claims based on alleged violations of the Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq*. Plaintiffs have proposed the following class under rule 23(b)(3):

> All persons employed by Defendant as servers from June 19, 2011, to the conclusion of this action, who contributed a portion of their tips to Defendant's tip out arrangement.

Dkt. 62

To be certified, this class must meet the Rule 23(a) requirements of numerosity, commonality, typicality and adequacy, as well as the Rule 23(b) requirements of predominance and superiority. *Starr v. Chicago Cut Steakhouse, LLC*, 75 F.Supp.3d 859, 871 (N.D. Ill. 2014). The court will address each of these requirements in turn.

#### a) Numerosity

To meet the numerosity requirement, a plaintiff must show that the proposed class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[A] plaintiff does not need to demonstrate the exact number of class members as long as a conclusion is apparent from good-faith estimates." *Barragan v. Evanger's Dog and Cat Food Co.*, 259 F.R.D.

330, 333 (N.D. Ill. 2009). Although there is no bright-line rule for exactly how many members are enough to establish a class, this district has found that that "[g]enerally, where class members number at least 40, joinder is considered impracticable and numerosity is satisfied." *Oplchenski v. Parfums Givenchy, Inc.*, 254 F.R.D. 489, 495 (N.D. Ill. 2008); *see also Pruitt v. City of Chicago*, 472 F.3d 925, 926-27 (7th Cir. 2006) ("Sometimes 'even' 40 plaintiffs would be unmanageable."); *Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 n.9 (7th Cir. 1969) (holding that a proposed class of 40 was "a sufficiently large group to satisfy Rule 23(a)").

In its answer and affirmative defenses to plaintiff's first amended complaint, Roka Akor admitted to having employed at least 40 individuals as servers during the relevant time period. Dkt. 50, ¶ 30. However, Roka Akor argues that plaintiffs have not established that more than 40 servers "contributed a portion of their tips to Defendant's tip out arrangement." Roka Akor's argument is undercut by the admission of Steven Tindle, one of Roka Akor's 30(b)(6) representatives, that the suggested tip-out spreadsheet is "always" followed. Dkt. 62-1, p. 45. If the tip-out spreadsheet is always followed, it is logical, then, to conclude that all of Roka Akor's servers contributed to the tip pool. Since Roka Akor has admitted it has employed at least 40 servers during the relevant time period, plaintiffs' conclusion that the class is comprised of at least 40 members is apparent from a "good-faith estimate." Roka Akor's other argument against numerosity—that the tip-out arrangement is voluntary—is addressed below.

### b) Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." To establish commonality, the class representative must demonstrate that members of the class "have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S.Ct. 2541, 2551 (2011). Commonality requires that all of the class members' claims "depend upon a

common contention" that is "of such a nature that is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

Plaintiffs' proposed class meets this commonality requirement because the tip-pool claim presents a common question that will generate a common answer. Plaintiffs allege that Roka Akor improperly operated the tip pool by (1) distributing a portion of the tips to the Executive Chef and Head Chef, both of whom qualify as "employer[s]" under the FLSA and IMWL; and/or (2) distributing a portion of the tips to certain "kitchen" staff and the "polisher," both of whom are non-tipped employees. If plaintiffs' allegations are correct, Roka Akor was not entitled to take the tip credit for employees participating in the improper tip pool under the IMWL. *Starr*, 75 F.Supp.3d at 872. Therefore, if the tip pool was improper, Roka Akor will be liable to all employees who participated in the improper tip pool. If, however, Roka Akor properly operated the tip pool (i.e., the tip pool was voluntary and/or all employees in the tip pool were tipped employees), then no participating employees will have a claim. *Id*. Moreover, the court is convinced that the distinction between the lunch shift and dinner is of no real consequence in terms of commonality. Although polishers were not included in the lunch shift tip-out arrangement, the tip pool would still be improper, if plaintiffs' allegations are proven true, since the Executive Chef, Head Chef, and/or "kitchen" staff are still part of the tip-out arrangement during the lunch shift.

### c) Typicality

"A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998). Typicality is closely

7

related to commonality. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). As discussed above, the success of the class's tip-pool claims will hinge on whether Roka Akor properly administered the tip pool. The claims of the named plaintiff, Sanchez, depend on the identical question. Because Sanchez's claims "have the same essential characteristics as the claims of the class at large," their claims are sufficiently "typical of the claims or defenses of the class." *Retired Chicago Police Ass'n*, 7 F.3d at 597. The arguments advanced by Roka Akor, namely that the tip-out arrangement was voluntary and all of the participants were tipped employees, is a defense to Sanchez as well as to the entire party, which satisfies the typicality requirement. *Williams v. Chartwell Fin. Servs., Ltd.*, 204 F.3d 748, 760 (7th Cir. 2000) ("[T]he claims or defenses of the representative party [must] be typical of the claims or defenses of the class.").

### d) Adequacy

Plaintiffs must show that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). There are typically two components to the adequacy analysis: (1) the adequacy of the named plaintiff's counsel; and (2) the adequacy of representation provided in protecting the different, separate, and distinct interest of the class members. *Retired Chicago Police Ass'n*, 7 F.3d at 598; *see also Spano v. The Boeing Co.*, 633 F.3d 574, 586-87 (7th Cir. 2011). In order to be an "adequate representative," the named plaintiff must not have "antagonistic or conflicting claims." *Retired Chicago Police Ass'n*, 7 F.3d at 598. Here, the claims of the named plaintiff are essentially identical to those of the proposed class members. In addition, there are no individual defenses or other claims that would in any way impede the named plaintiff's ability to adequately represent the interest of the class members. There is also no reason to doubt that plaintiffs' counsel will fail to represent the interest of the class members.

### e) Rule 23(b) Requirements

In addition to meeting the four Rule 23(a) factors above, plaintiffs must also demonstrate that their proposed class meets the requirements of Rule 23(b)(3), which requires plaintiffs to demonstrate that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In applying these standards, courts focus on "the substantive elements of plaintiffs' cause of action and inquire into the proof necessary for the various elements." *Simer v. Rios*, 661 F.2d 655, 672 (7th Cir. 1981). The Supreme Court has held that "the predominance criterion is far more demanding" than "Rule 23(a)'s commonality requirement." *Anchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624 (1997). The court thus must compare the role of common issues of law and fact with the role of individual issues. *Messner*, 669 F.3d at 814. Rule 23(b)(3)'s predominance requirement is satisfied when "common questions represent a significant aspect of [a] case and ... can be resolved for all members of [a] class in a single adjudication." *Id.*, *quoting* 7AA Wright & Miller, Federal Practice & Procedure § 1778 (3d ed. 2011). More simply, common questions can predominate if a "common nucleus of operative facts and issues" underlies the claims brought by the proposed class. *In re Nassau County Strip Search Cases*, 461 F.3d 219, 228 (2d Cir.2006), *quoting Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 299 (1st Cir.2000). However, individual questions need not be absent. *Messner*, 699 F.3d at 814. The rule requires only that those questions not predominate over the common questions affecting the class as a whole. *Id.*

As noted, Roka Akor argues that the tip-out arrangement was lawful because (1) every participant in the tip pool was a tipped employee and/or (2) the tip-out arrangement was

9

voluntary. While the first issue can be decided using common evidence, Roka Akor argues that the second issue—whether the tip-pool was voluntary—can be decided on an individual basis, i.e., each server's understanding of whether the tip-pool was voluntary. It is entirely possible that common evidence can also be used to determine whether the tip-pool was voluntary. More specifically, the allegation that Roka Akor facilitated the tip-pool arrangement, had fixed percentages for each category of employees, collected the tips in a uniform manner, and admitted that the tip-pool arrangement has always been followed could potentially establish that the arrangement was not voluntary. However, the court will not make a final determination at this point whether the tip-pool arrangement was actually voluntary. *Messner*, 669 F.3d at 811 (a district court should not turn class certification proceedings into a dress rehearsal for a trial on the merits). Suffice to say, though, that if the tip-pool arrangement was voluntary, then not only would the named plaintiff's claims fail, so would the claims of the class. Therefore, plaintiffs have adequately shown that the common questions will predominate over any individual issues.

To satisfy Rule 23(b)(3), plaintiffs must also show that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The existence of a common legal and factual issue makes class treatment particularly effective in this case. The superiority requirement is satisfied.

Plaintiffs have demonstrated that their proposed class meets the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a) and the predominance and superiority requirements of Rule 23(b)(3). Their motion to certify a class for their state-law tip-pool claims under IMWL is granted.

B. **Certification of Plaintiffs' FLSA Claims**

Section 216(b) of the FLSA permits plaintiffs to bring a collective action against an employer for unpaid minimum wages or overtime compensation on behalf of themselves and others "similarly situated." 29 U.S.C. § 216(b). A collective action under § 216(b) differs from a class action under Fed. R. Civ. P. 23 in that Rule 23 binds class members unless they opt out, whereas collective action members are bound under § 216(b) only if they opt into the action by providing their written consent. *Solsol v. Scrub, Inc.*, 2015 WL 1943888, at *2, *citing Woods v. New York Life Ins. Co.*, 686 F.2d 578, 579-80 (7th Cir. 1982).

Courts in in this district employ a two-step process for determining whether an FLSA lawsuit should proceed as a collective action. *Dailey v. Groupon Inc.*, No. 11 C 5685, 2014 WL 4379232, at *3 (N.D. Ill. Aug. 27, 2014). The first step requires the named plaintiff to establish that the potential class members are similarly situated by making a modest factual showing that they were victims of a common policy or plan to violate the law. *Id.* The standard for "similarly situated" is a liberal one which typically results in conditional certification of a representative class. *Rottman v. Old Second Bancorp, Inc.*, 735 F.Supp.2d 988, 990 (N.D. Ill. 2010). Likewise, the modest factual showing standard is lenient and demands only some factual support. *Johnson v. Pinstripes, Inc.*, No. 12 C 1018, 2013 WL 5408657, at *2 (N.D. Ill. Sept. 26, 2013). Moreover, in applying these standards, the "court does not consider the merits of the plaintiff's claims, or witness credibility." *Nehmelman v. Penn Nat. Gaming Inc.*, 822 F.Supp.2d 745, 751 (N.D. Ill. 2011).

At the second step, which takes place following discovery, the analysis is more rigid and requires the court to consider the following: "(1) whether the plaintiffs share similar or disparate factual and employment settings; (2) whether the various affirmative defenses available to the

defendant would have to be individually applied to each plaintiff; and (3) fairness and procedural concerns." *Dailey*, 2014 WL 4379232, at *3. At that time, a defendant may move to decertify the class or divide it into subclasses. *Johnson*, 2013 WL 5408657 at *3.

As noted by the parties in their respective briefs, discovery has already been completed in this case. As a result, the court can skip the first step of conditional certification and decide whether the collective action can be certified. For the purposes of determining certification of a collective action and a class action in a single suit, the court applies the same standard for certification of both types of cases. *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 772 (7th Cir. 2013). Because the named plaintiff has established commonality under Rule 23, he also satisfies his burden to show that other members of the potential collective action are similarly situated. Certification under 29 U.S.C. § 216(b) is therefore appropriate.

### III. CONCLUSION

For the foregoing reasons, plaintiffs' motion is granted. Plaintiffs' IMWL claims are certified as a class action. Plaintiffs' FLSA claims may proceed as a collective action. The parties are ordered to meet and confer regarding the names, dates of employment, and other pertinent information for all persons in the class defined by plaintiffs. The parties are also ordered to meet and confer regarding a mutually agreeable notice that is to be submitted to the court on or before February 19, 2016. The matter is set for status on February 26, 2016 at 9:30 a.m.

Date: January 7, 2016 /s/

Joan B. Gottschall
United States District Judge