IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MANUEL SANCHEZ, on behalf of himself and all other persons similarly situated, known and unknown,<br><br>        Plaintiff,<br><br>v.<br><br>ROKA AKOR CHICAGO LLC,<br><br>        Defendant. | Case No. 14-cv-4645<br><br>Judge Kendall |

**ORDER APPROVING COLLECTIVE AND CLASS ACTION SETTLEMENT**

This Court, having granted approval of the Parties' FLSA's collective action settlement and preliminary approval of the Parties' class action Settlement (ECF No. 100) and having reviewed Plaintiffs' Motion for Final Approval of Settlement Agreement for Class and Collective Action Claims and supporting exhibits submitted by Plaintiff, as well as the Parties' presentation at the Final Approval Hearing, and otherwise being fully informed in the premises, the Court hereby finds as follows[1]:

**The FLSA Settlement Is Approved**

1. On August 7, 2015, Plaintiff filed his Motion to Authorize Notice Pursuant to Section 16(b) of the FLSA and to Certify a Class Action Pursuant to Fed. R. Civ. P. 23(b)(3). ECF No. 61. The Motion was fully briefed. ECF Nos. 67, 68. On January 7, 2016, the Court granted Plaintiff's motion, certifying a class of all servers who worked for Defendant from June 19, 2011 to the conclusion of this action who contributed a portion of their tips to Defendant's tip out arrangement. ECF No. 70. The Class certified by the Court was "all persons employed by Defendant as servers from June 19, 2011, to the conclusion of this action, who contributed a

---

[1] All capitalized terms are defined in the Parties Settlement Agreement. *See* ECF No. 98-1.

portion of their tips to Defendant's tip out arrangement" (the "Class"). ECF No. 70, p. 11. The Court also granted final certification of Plaintiff's FLSA collective action claim. *Id.*

2. On January 6, 2016, the Court preliminarily approved the Parties' Settlement of Plaintiff's, opt-in plaintiffs', and Class Members' Fair Labor Standards Act claims as a fair and reasonable resolution of a *bona fide* dispute in this contested litigation. ECF No. 100, ¶ 1.

3. All persons in the Settlement Class who negotiate (i.e., cash or deposit) a Settlement Check shall be deemed to have consented to join the litigation and shall be a party to the case under the FLSA.

**The Rule 23 Settlement is Approved Because it is Fair, Reasonable and Adequate**

4. The Court finds that the Settlement Class certified in its January 6, 2017 Order (ECF No. 100) satisfies the requirements of Rule 23(a) and is maintainable under Rule 23(b)(3) for purposes of settlement of this action. The Settlement Class includes:

> All persons employed by Defendant as servers from June 19, 2011, to December 31, 2016, who contributed a portion of their tips to Defendant's tip out arrangement, and who have not excluded themselves from the Action.

5. Aaron Larson excluded himself from this Class Action in May 2016. Mr. Lawson is not a member of the Settlement Class, and the terms of the Settlement do not apply to him.

6. The Court approves the Parties' Settlement and finds that the Settlement is fair, reasonable, and adequate to all Class Members. The Court finds that the strength of the Plaintiffs' case on the merits, weighed against Defendant's defenses, and the complexity, length, and expense of further litigation, support approval of the Settlement.

7. The Gross Settlement Amount of $650,000.00, as set forth in the Settlement Agreement, is a fair, reasonable and adequate settlement of the claims. The Settlement was reached pursuant to arm's-length negotiations between the Parties on the eve of trial, and has the support of Class Counsel and Counsel for Defendant, both of whom have significant experience

representing parties in complex class actions.

8. The Notice of Class Action Settlement ("Class Notice") sent to the members of the Settlement Class via First Class Mail adequately informed the Class Members of the terms of the Settlement Agreement, their estimated recovery if the Settlement was approved, the process available to them to obtain monetary relief, their right to request exclusion from the Settlement and pursue their own remedies, and their opportunity to file written objections and to appear and be heard at the Hearing on Final Approval regarding the approval of the Settlement Agreement. The Class Notice also adequately informed the Class Members of additional resources available for further information, including the telephone number of Class Counsel and the Settlement Administrator from whom Class Members could access additional information and documents regarding the case and settlement. The Court finds that the Class Notice provided satisfied the requirements of Rule 23(c)(2)(B) and Rule 23(e)(1).

9. As identified in the declaration of Caroline P. Barazesh, Settlement Administrator, filed on April 17, 2017, the Court finds that no Class Member excluded himself or herself from the Settlement following the issuance of the Notice of Class Action Settlement and no Class Member objected to the Settlement. The absence of any objections to the Settlement by Class Members likewise supports approval of the Settlement. In addition, the litigation was settled only on the verge of trial, after the Parties had filed their Final Pre-Trial documents, and the litigation had progressed to a stage where the Court and the Parties could fully and completely evaluate the merits of the case, potential damages, and the probable course of future litigation, and thus warrants approval of the Settlement.

10. Class Members release and discharge "Released Parties" (as defined in the Settlement) from all claims, demands, rights, liabilities, and causes of action arising or occurring during the Class Period under the IMWL, 820 ILCS 105/1 *et seq,* as alleged in the First

Amended Complaint, that they were not properly paid minimum wages, as well as any claims for interest, liquidated damages, and attorneys' fees and costs. Class Members who negotiate their Settlement Checks shall be deemed to have released all such claims arising under the FLSA, 29 U.S.C. §201 *et seq.*

11. The Class Representative, Manuel Sanchez, and Defendant, Roka Akor Chicago, LLC, fully and unconditionally release each other from and for any and all claims, liabilities, suits, personal injuries, demands, debts, liens, damages, costs, grievances, injuries, actions or rights of action, known or unknown, in law or in equity, which were or which could have been filed with the Action or which could have been raised with an arbitrator, agency, or other government entity, occurring and/or accruing prior to the Effective Date and further defined in the Parties' Settlement Agreement.

12. Defendant shall transfer to the Settlement Administrator the Gross Settlement Fund of $650,000.00 per the terms of the Settlement Agreement.

13. Defendant shall pay, separate and apart from the Settlement Fund, the employer's share of all applicable state and federal payroll taxes on all wage checks distributed to the Plaintiff and Class Members. Defendant will transmit the amount payable for the employer's share of payroll taxes by wire transfer to the Settlement Administrator per the terms of the Settlement Agreement.

14. Class Members shall each receive their ratable shares of the Class Settlement Fund in accordance with the calculations provided for in the Settlement Agreement. The Settlement Administrator shall issue Class Members their settlement payments from the Class Settlement Fund (the Class Settlement Fund equals the Gross Settlement Fund minus Court-awarded attorneys' fees and costs, the Settlement Administrator's fee, and the Class Representative's Service Payment). Fifty percent (50%) of each Settlement Payment shall be

allocated as wages (which shall be subject to required tax withholdings and deductions and reported as wage income as required by law), and the remaining fifty percent (50%) of each Settlement Payment shall be allocated as penalties (which shall not be subject to required withholdings and deductions and shall be reported as non-wage income as required by law).

15. The Settlement Administrator shall deliver to Class Counsel the checks for the Class Representative's Settlement Award and Service Award.

16. The Settlement Administrator will mail checks for Class Members' Settlement Awards as provided in the Settlement Agreement after the Effective Date, and after the Settlement Administrator confirms a valid address for each Class Member through the National Change of Address (NCOA) Database. No settlement payment shall be mailed to any Class Member for which a valid address cannot be found. Any checks that remain uncashed after one hundred and twenty (120) days from the date they are issued by the Settlement Administrator shall be deemed void. The Settlement Administrator will return all funds from uncashed checks to Defendant.

**Service Payment to the Plaintiff Sanchez**

17. The Court approves the Class Representative Service Award to Plaintiff Sanchez in the amount of $7,500.00. The Service Award shall be paid from the Gross Settlement Fund. The Service Award recognizes Mr. Sanchez's service to the Class, including time and effort spent conferring with Class Counsel, filing and pursuing the Action, answering written discovery, producing documents, sitting for his deposition, attending the mediation, and in recovering compensation on behalf of all Class Members. The Service Award shall be reported as non-wage income and shall not be subject to payroll tax withholdings and deductions.

18. Plaintiffs in class and collective actions play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny. "Because a named plaintiff is an

essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). This is especially true in employment litigation. Service awards are well suited in employment litigation because the plaintiffs assume the risk that future employers may look unfavorably upon them if they file suit against former employers. *Beesley v. Int'l Paper Co.*, No. 06 C 703, 2014 WL 375432, at *4 (S.D. Ill. Jan. 31, 2014).

19. Incentive awards serve the important purpose of compensating plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs. *See, e.g.*, *Espenscheid v Directsat USA, LLC*, 688 F.3d 872, 876-77 (7th Cir. 2012) (Posner, J.); *Cook*, 142 F.3d at 1016; *Massiah v. MetroPlus Health Plan, Inc.*, No. 11 Civ. 5669, 2012 WL 5874655, at *8 (E.D.N.Y. Nov. 20, 2012); *cf. Follansbee v. Discover Fin. Servs., Inc.*, No. 99 Civ. 3827, 2000 WL 804690, at *7 (N.D. Ill. June 21, 2000) (recognizing the importance of incentive awards). Accordingly, incentive awards are commonly awarded to those who serve the interests of the class. *Massiah*, 2012 WL 5874655, at *8 (collecting cases); *accord Chesemore v. Alliance Holdings, Inc.*, No. 09 Civ. 413, 2014 WL 4415919, at *4 (W.D. Wis. Sept. 5, 2014); *Hawkins v. Securitas Sec. Servs. USA, Inc.*, 280 F.R.D. 388, 395 (N.D. Ill. 2011).

20. In examining the reasonableness of a requested service award, courts consider: (1) the actions the plaintiff has taken to protect the interests of the class, (2) the degree to which the class has benefited from those actions, and (3) the amount of time and effort the plaintiff expended in pursuing the litigation. *Cook*, 142 F.3d at 1016; *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 Civ. 2898, 2012 WL 651727, at *16 (N.D. Ill. Feb. 28, 2012). An examination of these factors warrants the approval of the requested service awards.

21. First, Plaintiff Sanchez took substantial actions to protect the interests of potential

class and collective action members, and those actions resulted in a substantial benefit to 64 additional Class Members, who will receive checks in amounts ranging from a maximum of over $39,000.00 and an average settlement payment of $5,876.50. Courts in this Circuit and others have approved incentive awards for similar activities. See *Briggs,* 2016 WL 7018566, at * 3 (approving $12,500 service award to two plaintiffs in FLSA settlement for a total of $25,000 in service awards); *Castillo v. Noodles & Company,* No. 16-cv-03036, 2016 WL 7451623 (N.D. Ill. Dec. 23, 2016) (approving $10,000 service award to four plaintiffs in FLSA settlement for a total of $40,00 in service awards). Mr. Sanchez's actions have resulted in substantial benefit to the class.

22. Second, Plaintiff Sanchez undertook substantial direct and indirect risk. In agreeing to file this class action suit in his name, Plaintiff undertook the significant risk that, "should the suit fail, [he could] find [himself] liable for the defendant's costs or even, if the suit [was] held to have been frivolous, for the defendant's attorneys' fees." *Espenscheid*, 688 F.3d at 876-77 (internal citations omitted). Although Plaintiff was no longer employed by Defendant when he filed the Complaint, he risked retaliation from future employers for the benefit of all Settlement Class Members. *See Beesley,* 2014 WL 375432, at *4 (recognizing that suits against former employers carry risks of professional and personal repercussions). "The incentive reward is designed to compensate [named plaintiffs] for bearing these risks." *Espenscheid,* 688 F.3d at 877; *accord Koszyk*, 2016 WL 5109196, at *3.

23. Third, Plaintiff Sanchez spent a significant amount of time and effort pursuing this litigation on behalf of all Class Members. Plaintiff assisted in the preparation and filing of the lawsuit, answered written discovery, provided a sworn declaration, sat for a deposition, attended a mediation, and otherwise assisted Plaintiffs' Counsel with the prosecution of the litigation. *Briggs,* 2016 WL 7018566, at * 3 (approving service award to named plaintiffs who

7

expended time and effort providing pre-litigation assistance to plaintiff's counsel, preparing and reviewing the complaint, providing a declaration, and helping prepare for mediation); *Castillo,* 2016 WL 7451626, at * 3 (approving service award to named plaintiffs who participated in an extensive pre-suit investigation, provided documents crucial to establishing the claims, and assisting plaintiffs' counsel in analyzing documents during the informal discovery process).

24. Accordingly, a service award of $7,500.00 to Plaintiff Sanchez for his service to the Class Members are approved.

### Class Counsel's Requested Attorneys' Fees and Costs are Approved

25. The Court grants Class Counsel's request for attorney's fees in the amount of Two Hundred Fifty Thousand and No/100ths Dollars ($250,000.00), as attorney's fees.

26. The attorneys' fees provisions of the Fair Labor Standards Act, 29 U.S.C. § 216(b), ("FLSA"), and the Illinois Minimum Wage Law, 820 ILCS 105/12, exist to enable plaintiffs to employ reasonably competent lawyers without cost to themselves if they prevail and, thereby, to help ensure enforcement of the substantive provisions of the FLSA and the IMWL. 29 U.S.C. §216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."); 820 ILCS 105/12 ("If any employee is paid by this employer less than the wage to which he is entitled under the provisions of this Act, the employee may recover in a civil action the amount of any such underpayments together with costs and such reasonable attorney's fees and may be allowed by the Court").

27. Class Counsel seek their attorney's fees on a lodestar basis. *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983). Multiplication of the number of hours reasonably expended on the merits of the litigation by the reasonable hourly rate equals the lodestar, *Small v. Richard Wolf Med. Instruments Corp.*, 264 F.3d 702, 707 (7th Cir. 2001), which is presumed to be a

8

reasonable fee, *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992). The Seventh Circuit has applied the *Hensley* framework to fee-award determinations for claims brought under the FLSA. See *Spegon v. Catholic Bishop of Chicago,* 175 F.3d 544 (7th Cir. 1999).

28. As explained below, Plaintiffs' Attorneys seek a compromised amount of Plaintiffs' Attorneys' Fees in the amount of $250,000.

### Class Counsel's Reasonably Incurred Time

29. Class Counsel provided the Court a summary of the billable time (and reasonable hourly rates), that they incurred in litigating this combined Rule 23 class and FLSA collective action. The billable time by timekeeper and requested hourly rates are as follows:

| TIMEKEEPER | HOURLY RATE | HOURS | TOTAL |
| --- | --- | --- | --- |
| Douglas M. Werman | $650 | 133.84 | $86,996.00 |
| Maureen A. Salas | $525 | 23.70 | $12,442.50 |
| Zachary C. Flowerree | $430 | 313.42 | $134,770.60 |
| Sarah J. Arendt | $400 | 50.10 | 20,040.00 |
| Cristina Calderon | $150 | 19.83 | 2,974.50 |
| Adriana Rodriguez | $150 | 38.83 | 5,824.50 |
| Jacqueline H. Villanueva | $150 | 18.64 | 2,796.00 |
| Othon Nunez | $150 | 42.83 | 6,424.50 |
| Maria Reyes | $150 | 2.34 | 351.00 |
| Carla Villanueva | $150 | 93.01 | 13,951.50 |
| **Total** | | **736.54** | 286,571.10 |

30. At the time this case settled, it was on the verge of trial. A trial date had been set and the Parties had a filed a Final Pre-Trial Order, including proposed jury instructions and motions in limine. Prior to that time, the Parties extensively litigated this case. Class Counsel's lodestar noted above does not account for the time Class Counsel will expend fulfilling their obligations in the Settlement Agreement, conferring with the Settlement Administrator, monitoring the administration of the Settlement, and responding to Class members' inquiries.

31. Based on the evidentiary materials and declarations submitted by Class Counsel, the Court concludes that the total of 736.54 hours that Class Counsel expended on the litigation is reasonable.

### Class Counsel's Reasonable Hourly Rates

32. Under the lodestar method, for purposes of determining a reasonable attorney's fee, the hourly rate must be calculated in accordance with the prevailing market rate in the relevant community. *Blum v. Stenson*, 465 U.S. 896, 895 (1984). Where a lawyer commonly charges clients by the hour, the regular billing rate is presumptively the market rate. *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 555 (7th Cir. 1999); *People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1310 (7th Cir. 1996). But if an attorney ordinarily works on a contingent-fee basis, a court should look to the next best evidence -- the rate charged by lawyers in the community of 'reasonably comparable skill, experience, and reputation.'" *People Who Care*, 90 F.3d at 1310 quoting *Blum,* 465 U.S. at 895 n.11.

33. Class Counsel provided declarations to establish that the hourly rates they request are the rates they also charge to hourly paying clients, have been awarded by other Courts, and are otherwise justified by their experience and recognition as national leaders in advocating the rights of working people in wage and hour litigation. The outstanding result Werman Salas P.C. obtained for all Class Members further supports the request for Class Counsel's requested hourly rates.

34. The Court concludes that the following hourly rates are reasonable and supported by the evidentiary showing made by Class Counsel:

| TIMEKEEPER | HOURLY RATE |
|---|---|
| Douglas M. Werman | $650 |
| Maureen A. Salas | $525 |
| Zachary C. Flowerree | $430 |
| Sarah J. Arendt | $400 |

| Cristina Calderon | $150 |
| --- | --- |
| Adriana Rodriguez | $150 |
| Jacqueline H. Villanueva | $150 |
| Othon Nunez | $150 |

35. A Court may consider other factors to determine loadstar amount. These factors include (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the experience, reputation, and ability of the attorneys; (9) the undesirability of the case; and (10) the nature and length of the professional relationship with the client. *People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1310-11 (7th Cir. 1996) ("*People Who Care I*") (citing *Hensley v. Eckerhart*, 461 U.S. 424, 436, 76 L. Ed. 2d 40, 103 S. Ct. 1933 (1983)). These factors support the award of Plaintiffs' Attorneys' requested fees.

### The Market Price for Legal Services also Supports the Requested Attorney's Fees

36. Although the Court awards Class Counsel their fee on a reduced lodestar basis, the Court recognizes that in awarding attorneys' fees, this Court ultimately "must do [its] best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid*, 264 F.3d at 718. District courts must "undertake an analysis of the terms to which the private plaintiffs and their attorneys would have contracted at the outset of the litigation when the risk of loss still existed." *Sutton*, 504 F.3d at 692. They must "do their best to recreate the market by considering factors such as actual fee contracts that were privately negotiated for similar litigation, [and] information from other cases . . . ." *Taubenfeld v. AON Corp.*, 415 F.3d 597, 599 (7th Cir. 2005).

37. Plaintiffs' request for effectively 39.5% of the common fund is also consistent with the market in the Northern District of Illinois. *Redman,* 768 F.3d at 630 ("... the ratio of (1) the fee to (2) the fee plus what the class members received" and the "attorney's fees awarded to class counsel should not exceed *a third or at most a half of the total amount of money going to class members.*" (emphasis added); *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992) (the "usual range for contingent fees is between 33 and 50 percent."); *In re Dairy Farmers*, 80 F. Supp. 3d 838, 845 (N.D. Ill. Feb. 20, 2015) (in class actions, "usual range for contingent fees is between 33 and 50 percent"); *Retsky Family Ltd. P'ship,* No. 97 C 7694, 2001 WL 1568856, at *4 (a "customary contingency fee would range from 33 1/3% to 40% of the amount recovered); *Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998) ("the typical contingent fee contract is between 33 and 40 percent …"); *Kirchoff,* 786 F. 2d at 323 ("40% is the customary fee in tort litigation" and noting, with approval, contract providing for one-third contingent fee if litigation settled prior to trial).

### The Results and the Benefits Conferred Upon the Class Representatives and the Class Members Justify the Requested Award

38. The Settlement Payments Class Members will receive are significant. The highest settlement payment to a Class Member is over $39,000 and the average Class Member award is $5,876.50. Class Members who cash settlement checks will receive the maximum wages owed to them – even after the payment of attorney's fees and litigation expenses – at the rate of $8.25 an hour as though they (i) were entitled to the difference between $8.25, the Illinois minimum wage, and the tip credit rate Class Members were paid, for *every hour* they worked during the Class Period. This is an outstanding result for Class Members inasmuch as Defendant disputes that their policies violated state and federal wage and hour laws. *See*, *Rotuna v. W. Customer Mgmt. Grp., LLC,* 4:09CV1608, 2010 WL 2490989, at *8 (N.D. Ohio June 15, 2010) (awarding one-third of common fund and describing recovery of 75% to 25% of claimed wages as

"exceptional."); *Dillworth v. Case Farms Processing, Inc.,* 5:08-CV-1694, 2010 WL 776933, at *8 (N.D. Ohio Mar. 8, 2010) (describing recovery of one-third of claimed wages as "exceptional.").

39. Nor will Class Members, with the exception of the Named Plaintiff, be required to provide a general release in order to participate in the Settlement. As a result, any claim a Class Member may have other than those asserted or related to this lawsuit remain unaffected. The absence of a general release exemplifies the results achieved for the Class. *See Ramah Navajo Chapter v. Babbitt,* 50 F. Supp. 2d 1091, 1103-04 (D.N.M. 1999) (noting that the limited, rather than general, nature of the release as further evidence of an exceptional result in favor of class members).

40. Based on their rate of compensation in similar cases, the risk Class Counsel undertook in engaging in this litigation with no guarantee of any compensation, and the excellent result achieved for Class members, Class Counsel is entitled to a reasonable attorneys' fees award in the amount of $250,000.00.

**Class Counsel's Request for Reimbursement of Reasonably Incurred Litigation Expenses and the Costs of the Settlement Administrator Are Approved**

41. Class Counsel's request for reimbursement of $5,713.41 in actual out-of-pocket expenses incurred in prosecuting this case, including costs for court fees, electronic research, court reporters, postage and courier fees, photocopies, and Plaintiff's portion of the mediator's fees, is granted. The Court finds these costs to be reasonably incurred.

42. The costs of the Settlement Administrator shall be paid from the Settlement Fund. Analytics Consulting, LLC shall be paid a sum of $4,814 from the Settlement Fund for the services it performed in connection with the administration of the Settlement.

**Dismissal and Post-Judgment Procedure**

43. This matter is dismissed without prejudice. If no motion is filed on or before sixty (60) days from the date this Order enter on the docket, the dismissal without prejudice will convert to a dismissal with prejudice.

44. The parties shall otherwise abide by all terms of the Settlement Agreement, which are incorporated herein, and this Order.

It is so ORDERED this 20th day of April, 2017

                                        Honorable Virginia Kendall
                                        United States District Judge